UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY ANN HINDSMAN,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:22-cv-00772-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 16 & 18[1]. For the reasons provided below, plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

I.   **Background**

In September 2014, plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act),

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 9.

alleging disability beginning December 13, 2011.[2]  Administrative Record (AR) 15, 1256. Plaintiff alleged disability due to fibromyalgia, arthritis, anxiety, herniated cervical discs, low back sclerosis, left plantar fasciitis, COPD, and asthma.  AR 228.  After a hearing, in February 2020, the ALJ issued a decision finding plaintiff not disabled.  AR 12-27.  Plaintiff sought judicial review of the agency decision in *Hindsman v. Saul*, No. 2:20-cv-01935 CKD (E.D. Cal.), and, in April 2021, the parties stipulated to a remand for further administrative proceedings.  AR 1309-1310.

On remand, the ALJ held a second hearing on November 9, 2021, at which plaintiff was represented by counsel.  AR 1281-1308.  Vocational expert (VE) Joseph Torres also testified. AR 1303-1307.  At the hearing, plaintiff testified that she was born in 1982 and that the main

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

medical conditions affecting her ability to work were anxiety, depression, PTSD, arthritis, lupus, and fibromyalgia. AR 1286. She testified that medications for her mental symptoms helped "somewhat," but her depression was out of control two or three days a month, when she would stay in bed crying. AR 1286-1287. Plaintiff testified that, during the day, between taking her children to school and picking them up[3], she often laid down for twenty minutes or more. AT 1287, 1291. She had daily neck pain, occasional flareups of back pain, and weekly headaches. AT 1288-1289. Plaintiff testified that she could stand for half an hour, sit for half an hour, and walk for 15 minutes. AR 1292-1293. She testified that, because of neck and back pain, she slept four or five hours a night. AR 1294. Her fibromyalgia caused joint pain and breathing problems. AR 1296-1297.

The VE testified that a person with plaintiff's assessed residual functional capacity (RFC) could perform the following jobs requiring "simple, repetitive tasks": small products assembler, mail clerk, and housekeeper. AR 1304-1305. Under questioning from plaintiff's counsel, the VE testified that if this hypothetical person had to miss four days per month, or lie down for two hours of an eight-hour shift, either condition would be work preclusive. AR 1305. The VE further testified that a limitation to occasional handling and fingering would be work preclusive. AR 1305.

In a January 6, 2022 decision, the ALJ found plaintiff not disabled and made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since December 13, 2011, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia; cervical and thoracic degenerative disc disease; asthma/chronic obstructive pulmonary disease (COPD); anxiety disorder; depressive disorder; post-traumatic stress disorder (PTSD).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[3] In 2013 medical records, plaintiff reported being a homemaker, with two children born in 2013 and 2015, respectively. AR 1268.

      listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, in that she can lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours of an eight-hour day and stand and walk for six hours of an eight-hour day, except she has the following additional limitations: she cannot engage in climbing of ladders, ropes, or scaffolding; she should avoid concentrated exposure to fumes, odors, dust, and environments with poor ventilation; she can occasionally bend, stoop, crouch, and climb ramps and stairs. In addition, she can understand, remember, and apply simple job instructions; she can maintain concentration, persistence, and pace for simple job tasks; she can interact with supervisors and coworkers, but with coworkers, she cannot engage in team work assignments; and she should avoid working with the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in] 1982 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 13, 2011 through the date of this decision.

AR 1258-1274.

## II. Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. Claims

Plaintiff claims the ALJ committed the following errors: (1) the ALJ erred in evaluating the medical opinions, such that the RFC is not supported by substantial evidence; and (2) the ALJ erred in evaluating plaintiff's subjective symptom testimony.

### IV. Analysis

#### A. Medical Opinions

Plaintiff asserts that the ALJ erred in evaluating the medical opinions of two treating physicians, such that the RFC is not supported by substantial evidence. Plaintiff also claims that the ALJ impermissibly interpreted medical evidence not reviewed by an opining physician.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Here, because plaintiff filed her applications in 2014, the older rules for evaluating medical evidence apply. In cases subject to these rules, the weight given to medical opinions depends in part on

whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Lester*, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

1. Dr. Kazmi

Plaintiff claims the ALJ erroneously weighed the opinion of Dr. Mohammad Kazmi, a neurologist who began treating her in October 2018. In December 2019, Dr. Kazmi filled out a three-page questionnaire in which he opined that plaintiff could not perform "any full-time work at any exertion level, including sit down." AR 907. He opined that plaintiff could lift less than five pounds and required 15-to-20-minute breaks every hour. AR 907. Dr. Kazmi listed plaintiff's primary impairments as "severe [headaches] and neck pain" and listed the objective

/////

findings on which he based his opinion as "tender[ness] in neck and photophobia." AR 907. He opined that plaintiff had been disabled since 2013. AR 907.

The ALJ assigned Dr. Kazmi's opinion "no weight," writing as follows:

> [On] December 19, 2019, neurologist Mohammad Kazmi MD opined the claimant could lift less than five pounds; could sit, stand or walk for 15-20 minutes at time; could sit for 2-3 hours of an eight hour day, stand and walk for 2-3 hours of an eight hour day; and must have breaks every hour for 15-20 minutes to lie down. She cannot do overhead reach with the arms. Dr. Kazmi opined she could not perform even sedentary exertional work. He opined these conditions had been disabling to the claimant since 2013.[4] He also opined the claimant was "unable to work." This opinion is accorded no weight, being not fully supported by this physician's minimal neurological findings on examination, nor medical imaging showing mild findings, and a record showing no recurrent or significant findings of trigger or tender points for fibromyalgia, *discussed above*. While he opines the symptoms were disabling to the claimant since 2013, he did not begin treatment of the claimant till 2018. Further a finding the claimant is disabled, or unable to work, is an issue reserved to the Commissioner.

AT 1272 (emphasis added).

Plaintiff argues that the ALJ did not provide legally sufficient reasons for discounting the opinion of Dr. Kazmi, a treating physician, because "[s]imply asserting Dr. Kazmi's opinion is not supported by his clinical findings or medical imagery is not sufficiently specific." ECF No. 16 at 28. However, earlier in her decision, the ALJ discussed Dr. Kazmi's medical notes and clinical findings in detail. AR 1260. The ALJ noted that Dr. Kazmi diagnosed "severe headaches and neck pain" in December 2019, but found "the record does not fully support his findings." AR 1260. The ALJ continued:

> His neurological examinations indicated minimally positive findings. . . . Brain scans have been generally unremarkable/normal. His final medical notes from January 2020 also do not well support his opinion. He noted MRI of the cervical spine showed only some degenerative joint disease. The MRI of the brain revealed no significant problems. He noted further that she reported a reduction in headaches and neck pain as social issues in her life resolved, e.g. at that time finding a home to live in with her kids.[5] . . . Cardiac, lung

---

[4] Citing AR 905-907.

[5] Citing AR 1202 (January 10, 2020 medical note stating plaintiff had found a place to live after a period of homelessness and reported frequent severe headaches). AR 1202. In a January 12, 2020 note, Dr. Kazmi stated: "It is the social issues creating a lot of problems in her life. She

7

> and abdominal findings were normal. She was alert and oriented as to person, place, and time, generally within normal deep tendon reflexes, 5-/5 diminished strength, with no sensory levels found. She demonstrated good judgment, reason, and normal affect.[6]

AR 1260 (some record citations omitted). The ALJ concluded: "This record of evidence . . . does not provide objective findings sufficient to demonstrate a frequency of headaches that would more than minimally affect the claimant's ability to perform basic work activities." AR 1260.

In discounting Dr. Kazmi's opinion, the ALJ also noted "no recurrent or significant findings of trigger or tender points for fibromyalgia." AR 1272. Earlier in her decision, the ALJ observed: "An examination of record shows no objective findings on examination of tender points or trigger points. There is no recurrent diagnosis of chronic pain syndrome in the record, other than noted as part of her medical history in October 2016." AR 1268. Plaintiff does not cite examination findings of trigger or tender points, nor other objective evidence of debilitating pain. ECF No. 16 at 28. Insofar as Dr. Kazmi's opinion was based on plaintiff's subjective allegations, the ALJ found these less than fully credible, as discussed below.

Because Dr. Kazmi's opinion was contradicted by other medical opinions in the record[7], the ALJ had to provide "specific and legitimate reasons" for discounting it, supported by substantial evidence. Here, the ALJ provided specific reasons by citing normal or mild neurological findings, normal or mild examination findings, scant evidence of fibromyalgia symptoms, and a treatment note that plaintiff's symptoms improved with situational changes. It is not clear whether Dr. Kazmi reviewed plaintiff's medical history before filling out the 2019 questionnaire; at any rate, the ALJ reasonably found that Dr. Kazmi's opinion of plaintiff's

---

still has headaches but not as bad. Headaches are less since she found a place to stay." AR 1185.

[6] Citing AR 1185-1186 (January 12, 2020 medical note).

[7] Consulting examiner Dr. Eugene McMillan opined in 2015 that plaintiff could lift and carry thirty pounds occasionally and fifteen pounds frequently, stand and walk for six hours of an eight-hour day, and sit without limits, among other limitations. AR 1270, citing AR 473. The ALJ gave this opinion partial credit. AR 1271. State agency medical consultant Dr. S. Amon opined in 2015 that plaintiff could perform jobs at the light exertional level. AR 1271, citing AR 79-80. The ALJ gave this opinion substantial weight. AR 1271.

functional abilities five years before he began treating her should be accorded less weight. Moreover, although Dr. Kazmi is a treating specialist in neurology and entitled to some deference in his field, his opinion that plaintiff was severely limited in her ability to stand, walk, sit, lift objects, and reach overhead for a six-year period (during most of which time, plaintiff was not his patient) could reasonably discounted by the ALJ as a conclusory and supported by minimal clinical findings. *See Meanel*, 172 F.3d at 1113. Plaintiff has not shown that the ALJ erred as to Dr. Kazmi's opinion.

2. Dr. Marzano

Plaintiff next claims that the ALJ erred as to the opinion of Dr. Joseph Marzano, a psychiatrist who evaluated her in January 2018 and treated her for the next two years. He diagnosed plaintiff with PTSD and prescribed medication for her depression and anxiety symptoms. AR 586, 940.

On December 19, 2019, Dr. Marzano filled out a one-page medical source statement opining that plaintiff had "marked" or "extreme" limitations in all mental functional areas and that she would miss more than five days per month due to mental symptoms. AR 908.

The ALJ accorded Dr. Marzano's opinion "no weight," writing as follows:

> Joseph Marzano PhD opined in December 2019, the claimant had marked and extreme mental limitations and would miss more than five days of work a month due to her mental issues.[8] The undersigned accords this opinion no weight. His opinion is not supported by significant evaluation and explanation, and not well supported by the limited findings of mental abnormalities in mental status exams and psychiatric findings at the time of physical exam detailed above. It is inconsistent with the State agency medical consultant and the consulting examiner.[9] Further, a finding the

---

[8] Citing AR 908.

[9] In May 2014, consulting examiner Dr. Robert Poston evaluated plaintiff and opined she had moderate limits in the ability to respond appropriately to supervisors, coworkers, the public, and to usual work situations. Her other mental impairments were mild. AR 1271, citing AR 465. In July 2015, state agency medical consultant Dr. F. Mateus opined that plaintiff was capable of sustaining concentration, persistence, and pace for substantial gainful activity work, with minimal contact with people. AR 1271, citing AR 82. The ALJ gave these opinions substantial weight for the most part, finding them "supported by general improvement and good control of symptoms with routine, conservative treatment, and the rather ordinary range of activities of daily living the claimant reported." AR 1271.

>claimant is disabled, or unable to work, is an issue reserved to the Commissioner.

AR 1272.

As above, the ALJ was required to provide "specific and legitimate" reasons, supported by substantial evidence, for discounting this opinion by a treating doctor. Here, the ALJ cited "limited findings" of mental impairment "as detailed above." AR 1272. Earlier in the decision, the ALJ discussed plaintiff's longitudinal mental health record at length, noting in part:

>Treatment notes document adequate memory, average intelligence, normal cognition, and attentive concentration. They also generally show she presents normal, pleasant, and exhibiting appropriate behaviors. Treatment notes also show no abnormal appearance, behavior, or conflicts with staff. The claimant is able to understand and sustain her treatment plan, attend medical appointments or get herself to the emergency room, maintain a conversational exchange with providers and take multiple medications with[out] any apparent difficulties.

AR 1263 (record citations omitted). Similarly, in a review of plaintiff's mental health record from 2013 to 2021, the ALJ found that plaintiff "generally presented mentally within normal [limits] with limited findings of abnormalities of appearance, behavior, speech, mood/affect, thought processes and content, capacities to concentrate, recall, follow commands, or exercise insight and judgment." AR 1269-1270 (record citations omitted).

As to Dr. Marzano's opinion, plaintiff argues in general terms that a treating physician is entitled to deference. ECF No. 16 at 32. However, plaintiff does not cite objective evidence of the "marked" and "extreme" limitations opined by Dr. Marzano at any point during the period of alleged disability. As summarized by plaintiff, her medical history from 2011 to 2021 shows her seeking treatment for physical (not mental) symptoms for the most part, though she presented to the ER for a panic attack in September 2016 (AR 529) and was prescribed medications for depression and anxiety. Insofar as Dr. Marzano's opined limitations were based on plaintiff's subjective allegations, the ALJ found these not fully credible, as discussed below. As the ALJ is not required to credit a conclusory opinion supported by minimal clinical findings, plaintiff has not shown error as to Dr. Marzano. *See Meanel*, 172 F.3d at 1113.

/////

3. <u>Other Medical Opinions</u>

Plaintiff next claims that the ALJ impermissibly interpreted the medical evidence spanning a number of years and arrived at an RFC determination that is not supported by substantial evidence.

Plaintiff notes that the ALJ relied on several medical opinions in the record, specifically the opinions of consulting examiner Dr. McMillan, state agency consultant Dr. Amon, consulting examiner Dr. Poston, and state agency psychiatrist Dr. Mateus. *See* AR 1270-172. Plaintiff points out that all these opinions (except Dr. Poston's in 2014) were issued in 2015, yet "the relevant time period goes to 2022, the date of the ALJ's decision." ECF No. 16 at 33. Plaintiff argues that the ALJ impermissibly interpreted the post-2015 medical evidence—including primary care records, chiropractic records, ER and urgent care records, and the results of an MRI and lumbar x-rays taken in 2020—to arrive at the RFC. ECF No. 16 at 33.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund*, 253 F.3d at 1156. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). The regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case. *See Corwin v. Kijakazi*, No. 1:20-cv-00394-GSA, 2021 WL 5771658, at *6 (E.D. Cal. Dec. 6, 2021); *see also* 20 C.F.R. § 404.1517.

Here, as in a recent case in this district, "plaintiff does not argue the record was ambiguous or inadequate; thus, the duty to further develop the record was not triggered." *Perez v. Comm'r*, No. 1:22-cv-00297 SAB, 2023 WL 4023997, at *15 (E.D. Cal. June 15, 2023), *citing Mayes*, 276 F.3d at 459–60; *Bayliss*, 427 F.3d at 1217; *Brown v. Berryhill*, 697 Fed. App'x 548, 549 (9th Cir. 2017). "Moreover, a showing of unfairness or prejudice resulting from any failure to develop the record is required for remand, *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997), and Plaintiff has not made this requisite showing." *Id.*

In the instant case, plaintiff broadly asserts that her "impairments progressively worsened," but points to no specific evidence of mental limitations after 2015. ECF No. 16 at 34. Nor does plaintiff explain why the post-2015 evidence considered by the ALJ should have resulted in a finding of disability rather than the assessed RFC for light work with some mental limitations. Contrary to plaintiff's argument, the passage of time alone does not constitute a reason to further develop the record. *See Corwin*, 2021 WL 5771658, at *6 ("If the mere passage of time and presence of additional medical evidence in the record established ambiguity, a consultative examination would be required in every case. Yet the regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case."); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"). Plaintiff has not shown harmful error on this issue.

B. Credibility

Plaintiff asserts that the ALJ erred in discounting plaintiff's subjective symptom testimony.

The ALJ summarized plaintiff's statements in the record and testimony, writing in part:

> She states she is unable to work due to the functional limitations caused by her physical and mental impairments. The claimant has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, remembering, completing tasks, concentrating, understanding, following instructions, using hands, reaching, and getting along with others, due to the symptoms of her impairments and chronic pain.

AR 1265 (record citations omitted). The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision." AR 1265.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

Here, the ALJ considered the objective medical evidence of plaintiff's claimed impairments and limitations. *See* AT 1259-60 (headaches), 1267 (asthma, neck and back pain), AT 1268 (fibromyalgia), and AT 1269-70 (mental symptoms). As to alleged physical symptoms, the ALJ found that plaintiff's physical exams and testing results were largely normal, with "occasional abnormal clinical findings" but no "significant signs that persisted throughout the relevant period." AR 1265; *see* AR 1265-67 (summary of evidence). Similarly, the ALJ found that plaintiff's allegations of disabling mental symptoms were unsupported by objective findings; rather, "she generally presented mentally within normal [limits] and with limited findings of abnormalities of appearance, behavior, speech, mood/affect, thought processes and content, and capacities to concentrate, recall, follow commands, or exercise insight and judgment." AR 1269;

*see* AR 1269-70 (summary of evidence). *See Osenbrock v Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (ALJ properly justified the rejection of excess symptom testimony by finding that "neurological and orthopedic evaluations have revealed very little evidence of any significant abnormality of the claimant's upper or lower extremities or spine."); 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]").

The ALJ also found that plaintiff's daily activities suggested greater functional abilities than alleged, writing as follows:

> Based on her report and testimony, the claimant is substantially independent in self-care and can perform household chores, drive and use public transportation and shop. She . . . rais[es] her children, now approximately ages 3 and 6, and interacts with friends and family. Medical records show she sought a TB test for schoolwork in July 2017, suggesting greater level of activity than has been reported.

AR 1269, citing, *e.g.*, AR 253-261 (2015 adult function report stating that plaintiff takes care of 18-month-old daughter; does laundry, dishes, light cleaning and washes the car; cooks meals; and shops for household items). Because the ALJ used proper process and provided proper reasons for her adverse credibility finding, the court defers to her discretion on this issue.

### V. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. Defendant's cross-motion for summary judgment (ECF No. 18) is granted;

3. The Clerk of the Court shall enter judgment for defendant and close this case.

Dated: August 18, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE